UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| CHRISTEN WARKOCZEWSKI, | § | |
| | § | |
| Plaintiff | § | |
| | § | CAUSE OF ACTION: |
| v. | § | |
| | § | 1:21-cv-739 |
| THE CITY OF AUSTIN, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Christen Warkoczewski brings this 42 U.S.C. § 1983 case against the City of Austin for the excessive force it inflicted on her as she was exercising her free speech and assembly rights and demonstrating against police violence.

### I. PARTIES

1. Plaintiff Christen Warkoczewski is a resident of Travis County, Texas.

2. Defendant City of Austin is a municipality that operates the Austin Police Department and may be served through its City Clerk at 301 W. 2nd Street, Austin, TX 78701. The City's policymaker for policing matters was Police Chief Brian Manley. *Service is hereby requested at this time.*

### II. JURISDICTION AND VENUE

3. This Court has federal question jurisdiction over this 42 U.S.C. § 1983 action pursuant to 28 U.S.C. §§ 1331 and 1343.

4. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(1), as all relevant events occurred in this division, and the Defendant operates in this state and division.

### III. FACTS

5. Following the police killings of George Floyd in Minneapolis and Mike Ramos in Austin, demonstrators organized protests against police brutality outside the headquarters of the Austin Police Department on May 30, 2020 and May 31, 2020.

6. Plaintiff Warkoczewski attended the demonstration to lend her voice to the chorus demonstrating against police violence.

7. During the demonstration on May 31, 2020, numerous Austin police officers had blocked IH-35, and were standing in a line along the embankment and overpass on the southbound lane where IH-35 crosses 7th Street, facing west.

8. These APD officers were all wearing body armor, helmets, and face shields, and were armed with multiple weapons – including pepper spray, beanbag shotguns, and batons (in addition to their handguns and tasers). They were equipped as if they were ready for battle with the demonstrators.

9. APD officers were instructed not to document their uses of force as they occurred, a change in policy known to Chief Manley and that contributed to APD's overuse of force on May 30 and 31, 2020.

10. While Warkoczewski was demonstrating, APD officers shot tear gas canisters toward the crowd of protestors among which Warkoczewski was standing.

11. Warkoczewski picked up a traffic cone and placed it on top of one of the tear gas canisters near her.

12. Immediately after she did this, Warkoczewski began to run away from the cone, the billowing tear-gas cannister, and the line of heavilyt armored police officers.

13. As Warkoczewski was running away back into the crowd, she posed a threat to no one.

14. Warkoczewski was unarmed.

15. Yet at least one APD officer inexplicably and unreasonably shot Warkoczewski in the face with a dangerous projectile "beanbag" shotgun round.

16. At no point in time was deadly force warranted against Warkoczewski.

17. In fact, at the time Warkoczewski was shot in the face, no force was warranted against her at all.

18. The projectile hit Warkoczewski in the face, fracturing her jaw and causing significant physical pain, mental anguish, impairment, and disfigurement – long-term injuries that she continues to suffer from, will continue to suffer from in the future, and that have required reconstructive surgery to begin to repair.

19. The "beanbag" shotgun round remained lodged in her head until hours later when it had to be surgically removed at Seton Hospital.

20. The APD officer's attacks on Warkoczewski were shocking, unreasonable, and would chill a person of ordinary firmness from continuing to engage in protected speech and assembly.

21. Tragically, Warkoczewski was just one of many people APD officers shot in the face or head on May 30 and May 31.

22. APD's victims of excessive force on May 30, 2021 included Steven Arawn, Jason Gallagher, Bomani Barton, Joe Herrera, and Levi Ayala, as well as several others.

23. No facts known to Defendant justified shooting Arawn with a kinetic projectile .

24. No facts known to Defendant justified APD using force on Gallagher.

25. No facts known to Defendant justified shooting Barton with a kinetic projectile.

26. No facts known to Defendant justified shooting Herrera with a kinetic projectile.

27. No facts known to Defendant justified shooting Ayala in the head with a kinetic projectile.

28. In fact, after an APD officer shot Ayala in the head, one APD officer asked another "having fun yet?"

29. While numerous people had been injured by APD, including head injuries from projectiles fired by APD on May 30, 2020, rather than correct this unconstitutional behavior by his officers, of which he was plainly aware, then Chief Manley and his senior leadership authorized APD to continue to fire dangerous projectile "beanbag" shotgun rounds at innocent people, into crowds, and at people's heads on May 31, 2020 as well.

30. As a consequence, in addition to Warkoczewski, numerous other defenseless individuals were victimized and shot in the head with projectile "beanbag" shotgun rounds on May 31, 2020 while they were exercising their First Amendment rights.

31. One individual APD shot in the head was Justin Howell, a twenty-year-old Black student who had done nothing wrong and was merely exercising his clearly-established First Amendment rights.

32. Police had no justification for using force against Howell.

33. The APD also shot a civilian medic, Maredith Drake, with a projectile "beanbag" shotgun round while she had her hands up and was simply trying to get the severely injured Howell to safety.

34. Police had no justification for shooting Drake.

35. The APD also shot Anthony Evans near APD Headquarters on May 31, 2020, fracturing his jaw and causing significant physical and mental injuries from which he continues to suffer.

36. Police had no justification for using force against Evans.

37. Earlier on May 31, 2020, an APD officer shot Annette Chavez in the head with a kinetic projectile, injuring her.

38. The APD's use of force against Chavez was not justified by any facts known to the APD or its officers.

39. Upon information and belief, when the APD shot Warkoczewski, the shooter was also substantially motivated by his opposition to the demonstrators' message that police violence must end.

40. To date, none of the officers who shot people in the head with kinetic projectiles have been disciplined.

41. Nor has the APD and its policymakers disciplined any of the officers who saw and did not stop officers from using excessive or conscience shocking force.

42. And APD's leaders, who could have and should have stopped their subordinate officers' dangerous conduct, have not been counseled or disciplined in any way for permitting this misconduct.

43. This lack of discipline as to senior leaders and Manley himself is all the more shocking as then Chief Manley agrees that Plaintiff Warkoczewski, Anthony Evans, Justin Howell, Levi Ayala, and numerous other individuals were victims of unjustifiable force by APD officers on May 30 and May 31, and that such force was not justified by any facts known to the department or any of the shooting officers.

44. Moreover, then APD Chief of Police, Brian Manley, adopted policies that encouraged, authorized, or tolerated this unreasonable, unnecessary, and brutally excessive force even though Chief Manley had long known of the dangers of firing projectiles into crowds and at defenseless persons, and was actually aware that bean bag rounds fired from shotguns had been unreasonably used multiple times on May 30, 2020 and multiple times again on May 31, 2020 prior to the attack

on Warkoczewski. Despite this, and Manley's awareness of the severe injuries caused by them, APD policies – and Manley – authorized their continued use.

45. Chief Manley knew, as any reasonable policymaker capable of rational thought would also know, that as a direct consequence of such practices, people like Plaintiff would be injured and victimized, and their constitutional rights violated.

46. Moreover, APD had a long-standing policy of paramilitary training its officers to act as "warriors," and see conflict with members of the public as inevitable as part of an "us vs. them" culture. Officers were trained to be "indifferent to the community," according to a report commissioned by the City.

47. APD's training academy taught cadets – who later became APD officers – to act as if they were at war with the community they were supposed to be protecting. In one incident, an academy instructor told cadets that if "anyone here says they want to be a police officer to 'help people,' I will punch you in the face."

48. Another instructor told cadets to "pick someone out of a crowd, and ask yourself, 'how could I kill that person?'"

49. A report commissioned by the City found that officers were trained to see "the Austin community [as] the enemy."

50. Unsurprisingly, the report further found that "the culture of a police training academy reflects the culture of a department and impacts the mindset and approach to policing." The report concluded that the City must provide "training for handling protests with non-militaristic approaches."

51. As a direct and proximate result, numerous other people suffered severe and devastating injuries as a result of APD's practices and excessive force on May 30, 2020 and May 31, 2020.

52. According to Dell Medical Center's physicians, seven victims required surgical interventions and four victims, one of whom was Plaintiff, retained portions of the "beanbag" shotgun rounds in their bodies/heads.

53. More particularly, victims suffered intercranial hemorrhages, depressed skull fractures, depressed frontal bone fracture, fractured jaws, and brain damage.

54. After ignoring the pattern of excessive force that preceded and followed the attack on Warkoczewski for several more days, multiple members of the City Council called for Manley to be removed as APD's Chief of Police.

55. Following the calls to remove him, Chief Manley acknowledged the obvious, the policies at Austin Police Department concerning the use of bean bag shotguns were dangerously flawed and he agreed to change them – a change any reasonable policymaker should have known to have made prior to Plaintiff being shot.

56. No longer would officers be permitted to fire potentially deadly kinetic projectiles from shotguns at people in crowds.

57. Manley, however, did not reform the dangerous paramilitary culture of the police academy.

### IV. CAUSES OF ACTION

**The City of Austin directly and through its practices caused Plaintiff's rights to be violated and caused her to suffer serious injuries.**

58. At least one Austin Police Department Officer, while acting under color of law, used excessive force on Christen Warkoczewski when she posed no danger to anyone.

59. This use of force was wholly excessive to any conceivable need, objectively unreasonable in light of clearly established law, and directly caused Plaintiff Warkoczewski to suffer serious injuries. Therefore, Warkoczewski's clearly established Fourth Amendment right to be free from excessive force and unreasonable seizure was violated.

60. As a direct and proximate result, Warkoczewski suffered and continues to suffer significant injuries.

61. Likewise, the First Amendment's protections for free speech and assembly prohibit agents of the government from subjecting an individual, like Warkoczewski, to retaliation for engaging in protected speech.

62. Warkoczewski exercised her free speech and assembly rights by attending the demonstration against police violence, and by demonstrating near officers.

63. Upon information and belief, the officer's use of force against Warkoczewski was substantially motivated by his disagreement with the content of Warkoczewski's speech. Upon information and belief, the officer shot Warkoczewski with the beanbag shotgun substantially because the officer disagreed with Warkoczewski's right to assemble and/or her protected speech.

64. Moreover, Defendant City of Austin, had the following policies, practices, or customs in place when at least one APD police officer injured Plaintiff Warkoczewski:

    a. Shooting kinetic projectiles into crowds where people could be injured;

    b. Shooting people in the head with kinetic projectiles;

    c. Using, authorizing, and/or tolerating excessive force against non-violent protestors;

    d. Failing to adequately discipline officers;

    e. Failing to adequately supervise officers;

    f. Failing to adequately train officers concerning de-escalation of force, crowd control, use of force against non-violent protestors, and the use or misuse of kinetic projectiles

    g. Failing to train officers regarding demonstrators' free speech and assembly rights;

    h. Not intervening to stop constitutional violations, including but not limited to retaliation, conduct that shocks the conscience, and excessive force;

      i. Training officers to act as paramilitary "warriors," and creating an "us vs. them" culture where officers were "at war" with the community they were supposed to be serving, which encouraged officers to use excessive force;

      j. Failing to train or instruct officers about specific incidents it considers unreasonable, excessive force, or in violation of the Constitution; and

      k. Using munitions that are dangerous or expired.

65. Each of the policies, practices, or customs delineated above was actually known, constructively known, and/or ratified by City of Austin and then Chief of Police, Brian Manley (APD's policymaker), and was promulgated with deliberate indifference to Warkoczewski's First, Fourth and Fourteenth Amendment rights under the United States Constitution. Moreover, the known and obvious consequence of these policies, practices, or customs was that Austin Police Department officers would be placed in recurring situations in which the constitutional violations described within this complaint would result. Accordingly, these policies also made it highly predictable that the particular violations alleged here, all of which were under color of law, would result.

66. Moreover, then Chief Manley was also aware of multiple similar incidents chilling speech and in which unconscionable, excessive, or unreasonable force was used but he did not remedy the misconduct. Thus, the City is also directly liable for Chief Manley's failure to train, supervise, and correct misconduct, which proximately caused Plaintiff to suffer injuries and have her rights violated.

67. Consequently, the policies delineated above were a moving force of Plaintiff's constitutional deprivations and injuries, and proximately caused severe damages.

68. Plaintiff Warkoczewski brings this claim pursuant to 42 U.S.C. § 1983.

## V. DAMAGES

69. Plaintiff Warkoczewski seeks the following damages:

   a. Past and future medical expenses;

   b. Past and future economic damages, including (but not limited to) loss of earning capacity;

   c. Past and future physical pain and mental anguish;

   d. Past and future impairment;

   e. Past and future disfigurement; and,

   f. Attorneys' fees pursuant to 42 U.S.C. § 1988.

## VI. PRAYER FOR RELIEF

70. To right this injustice, Plaintiff requests the Court:

   a. Award compensatory damages against Defendant;

   b. Award Plaintiff costs and fees, including but not limited to expert fees and attorneys' fees, pursuant to 42 U.S.C. § 1988;

   c. Award pre-judgment and post-judgment interest at the highest rate allowable under the law; and,

   d. Award and grant such other just relief as the Court deems proper.

Dated: August 24, 2021

    Respectfully submitted,

    **EDWARDS LAW**
    1101 East 11th Street
    Austin, Texas 78702
    Tel.  512-623-7727
    Fax.  512-623-7729

    By     /s/ Jeff Edwards
        JEFF EDWARDS
        State Bar No. 24014406
        jeff@edwards-law.com
        SCOTT MEDLOCK

State Bar No. 24044783
scott@edwards-law.com
DAVID JAMES
State Bar No. 24092572
david@edwards-law.com
PAUL SAMUEL
State Bar No. 24124463
paul@edwards-law.com

**LAW OFFICES OF BOBBY R. TAYLOR**
1709 E Martin L. King Jr. Blvd.
Austin, TX 78702
Tel: (512) 476-4886
    BOBBY TAYLOR
    State Bar No. 19685500

**ATTORNEYS FOR PLAINTIFF**